Catkon, Ch. J.
1. It is insisted, the indictment should have charged the killing, to make it a capital offence, not as formally to have been done with malice prepense, but in addition that it was done with premeditation. The object of the indictment is, to give the defendant precise in *346 formation of the facts alleged against him. The common law had fixed forms of stating the facts, to change which would have produced great confusion, and therefore the legislature very wisely declared, by the 72d section of the Penitentiary code, that the old forms should be sufficient to authorize the application of the new punishment, in all cases in which the punishment was changed by that act. In murder, with malice aforethought, it would be likely to result in much inconvenience, were it necessary to change the well settled form of the common law indictment. The jury can as well from the facts proven, apply the grade of punishment, as where a defendant is found guilty of manslaughter when capitally indicted.
2. Had the defendant the benefit of a fair and impartial trial? I think he had; so much so, as not to warrant this court in granting a new trial because of any misdirection of the court, or for any admission of improper evidence. The court might, and in strictness ought to have explained to the jury, the distinction between murder in the first degree, and murder in the second degree, as contemplated by the Penitentiary act. This was not attempted: yet, the court was not asked to construe the act, by the prisoner, or his counsel, relying on the argument, no doubt, as more to the advantage of the defendant. The jury were the judges of the law, as well as the facts. The counsel for the State and for the prisoner, it is fair to presume, stated the law truly, and alike to the jury; in which case the omission to charge was proper. In any event, the remaining silent was no error for which this court can reverse.
3. Was the evidence sufficient to authorize the jury to find the defendant guilty of murder in the first degree ?
The penitentiary act provides, “all murder which shall be perpetrated by‘means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, shall be deemed murder in the first degree, and be punished with death.”
*347 That the murder of Wilson was willful, (done of purpose;) that it was malicious, (done with malice aforethought,) in the legal sense, is certain; and that the fatal stroke with the axe was given, on some predetermination, some very short time (but a moment) before it was inflicted, is probable. But that the defendant came to the ground where the line was run, deliberately predetermined to slay the deceased, there is no sufficient evidence appearing on the record; or that he had any hostile intentions of a dangerous kind, until the controversy arose concerning the cultivation of the ploughed land, only a moment before the mortal blow was given, is not proved, I think, sufficiently to authorize the capital verdict. To have authorized this, the slaying must have been premeditated, that is, conceived in the mind, and intended by Mitchell to be executed beforehand. Did he deliberately act upon predetermination; or, did he act upon a sudden impulse of passion, disconnected with any previous design to kill? If the former state of mind induced the act, then it was murder in the first degree; if the latter, murder in the second. That it was a murder deserving the highest punishment next to death, is most manifest: Indeed, I was at first inclined to the opinion the verdict was proper; but reflection on the true construction of the penitentiary act has brought my mind to a different conclusion. The prisoner will be remanded for another trial.
Oreen, J.
The first question presented for consideration by the counsel for the prisoner, is, whether, to warrant a conviction for murder in the first degree, the indictment ought to charge the party according to the definition of murder in the first degree, as given in the third section of the act of 1829, ch. 23.
The second section of the act gives the common law definition of murder; and the third section declares that £iall murder that shall be perpetrated by means of poi *348 son’ or lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration of, or attempt to perpetrate, any arson, rape, robbery, burglary or larceny, shall be deemed murder in the first degree, and all other kinds of murder shall be deemed murder in the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder of the first or second degree; but if such person shall confess his guilt, the court shall proceed by the empannelling of a jury and examination of testimony, to find and determine the degree of the crime, and to give sentence accordingly.” It will be apparent by an examination of this section, that the legislature intended that a defendant should be charged in the common law form. They say that the jury before whom a party indicted for murder shall be tried, shall determine the degree of guilt, thereby clearly indicating that the indictment is to be for murder, simply. But this sense of the legislature is still more clearly shown by the last clause of this section. It provides, that if a person indicted for murder shall confess his guilt, the court shall proceed by empannelling a jury, and the examination of witnesses, to find and determine the degree of the crime. Now if the indictment were to charge the offence to be murder in the first degree, in the words of the first clause of this section, as the prisoner’s counsel contend it ought, and if the party indicted were to confess his guilt, what would there be for a jury to find, and why should one be empannelled? The indictment charges him with certainty and precision, with being guilty of murder in the first degree, and he admits the charge. Would you summon a jury to find, by evidence, that his offence was of a lower grade than that admitted by him? The legislature could not have thought of any such absurdity. But construing the act that they intended the indictment should be in common law form; then *349 taking into view the distinction they were about making in the punishment of the different grades of murder, and this provision for a jury when the party pleads guilty, was wise, and was indispensable to the administration of the law they were enacting. Upon his confession of guilt, there would still be uncertainty as to what grade of murder that guilt belonged, and. therefore in order to pronounce judgment on him, some further enquiry would be necessary. This view of the subject establishes beyond question, that the legislature intended that'all cases of murder should be charged as at common law. But if there could be any doubt on the construction of the third section, that doubt is removed by the 72d section of the same act, which provides, “that all indictments for offen-ces enumerated in this act, which are offences at common law, shall be good, if the offences be described or charged according to the common law.” Murder is a common lav/ offence; and whether it be committed under circumstances of peculiar aggravation, and for the sake of graduating the offence is called “murder in the first degree,” or under circumstances of less aggravation, and for the same reason is called “murder in the second degree,” it is still the common law offence of murder. The legislature have not divided it into two crimes, as the third section plainly shows; but they say the particular manner in which it is sometimes committed, or the particular circumstances attending its committal, shall be considered and treated as a grade more heinous than when otherwise committed. Either grade must have the common law ingredients of murder, and is viewed, as the whole of the third section shows, as one offence, with different degrees of atrocity. This being the case, the 72d section expressly makes the common law indictment good under the statute.
The court charged the jury, “that the killing being proved, the law presumes that it was malicious, and that *350 it was incumbent on the defendant to show, by proof, . „ . . , , ' matter m alleviation, or that it was a less orrence.
The prisoner’s counsel insist that this charge is erroneous,- and that this court, in the case of Coffee vs. The State, (3 Yerger, 283,) has laid down the law differently. I do not thus understand that case. In the opinion delivered by me, I hold that the killing being proved, malice is presumed, and the onus of exculpation rests on the prisoner. This I understand to be contained, in substance, in the other opinions delivered, and to be distinctly laid down in all the books on criminal law. The charge of the court, in this case, is therefore correct, as far as it goes. I cannot say that the evidence in the cause did not justify the jury in finding the prisoner guilty of murder in the first degree; but as Judges Peck and ■ Catron think differently, and as under this statute I think the court ought particularly to have explained to the jury what description of killing constitutes murder in the first degree, so that their minds might have been drawn to the distinction made by the statute; and as this was not done, I concur in reversing the judgment and awarding a new trial.
Catron, Ch. J. Green and Whyte, Judges, concurred in the view taken of the act of 1829, ch. 23, in the opinions of Catron, Ch'. J. and Green, J.
Peck, J.
The construction this court shall put upon the 3d section of the late penal code is of the utmost importance to be known; the question in this cause directly arises, what that construction shall be; the charge of the judge in the court below being before us on exceptions, must be compared with the law as it now stands. Unfortunately we have no aids from adjudications in those States where like statutes exist and have received construction. ■
Do the facts on the record before us make a case of murder in the first degree, and should the court have *351 drawn the distinction in his charge between murder in the first and second degree?
In the second section of the act, the definition is given as at common law; but the third section provides, that ccall murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate, malicious and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, any arson, rape, robbery or larceny, shall be murder in the first degree, and all other kind of murder shall be murder in the second degree; and the jury before whom any person indicted for murder shall be tried, shall, if they find such person guilty thereof, ascertain in their verdict whether it be murder in the first or second degree; but if such person confess his guilt, the court shall proceed by empannelling a jury, and examination of testimony, to find and determine the degree of the crime, and give sentence accordingly.”
If the conviction be for murder in the first degree, the convicted person shall suffer death; if in the second degree, he shall be confined, &c.
In the act before us we have a radical change from that given at common law; new rules must be formed to aid juries in convictions under the third section of the statute, from those formerly known and practised upon by our courts. If this be not so, then men’s lives, under the statute, depend upon the caprice or will of jurors; for if a court attempt to aid a jury, sitting under the statute, that charge must differ from the charge for murder as at common law; the jury are misled if the court omit to charge under the statute, and charge as at common law. Murder at common law was an integral thing; under the statute it is sub-divided; as the law makes it so, some one must draw the line of distinction between the higher and lower grade of murder. Though malice is left to exist under either definition of these offences, murder in the first and second degree, still the statute makes a distinc *352 tion between the characters of malice. The statute considers express malice, “by poisoning, lying in wait, or willful, deliberate, premeditated and malicious killing,” more heinous than that killing where the malice is implied, no matter what the manner of killing may be; and in my opinion, here lies the distinction, a distinction which, as to the prisoner, make&jso marked a difference in his fate that it must not be overlooked. That it shall not be in any case overlooked, is evident from the concluding part of the section. When the person pleads not guilty, the kind of malice, whether express or implied, is the subject of inquiry; and if he even plead guilty, a jury shall be called and the enquiry submitted as to that very point before judgment can follow. Hence in all cases where the charge is murder, the attention of the jury should be called to this very material distinction arising on the character of malice with which the act was accompanied. Was it express, or was it implied?
Let us now see what the court did charge: “Should you find the defendant guilty inthe first degree, you will say so, and no more. If you should find him guilty in the second degree, you will find the time in the penitentiary between ten and twenty one years; should you find him guilty of manslaughter, you will fix the time between two and ten years; should you find him guilty of no offence, you will say not guilty, and no more; should you believe he has the reason which is common to man, you should hold him responsible for his crimes. You will consider the validity of his pleas of justification, excuse and alleviation, the first without blame, the second very little, the last although unlawful must have been sudden and sufficiently violent to excite the blood and keep it boiling to the moment of the act; and when the violence is to the person, he may use a dangerous weapon; not so when the violence is to the property real or personal, for in this latter case he may chastise, but not with an instrument calculated to kill. The fact of killing be *353 ing proved, the law presumes that it was malicious, and that it was incumbent on the defendant to show, by proof, matter in alleviation, or that it was a less offence.”
What, under this charge, was there left for the jury to find? Certainly not the isolated fact whether the killing was wilful, deliberate, malicious and premeditated, as separate and distinct from the other malicious killing, which would make the crime a shade less heinous. In other words, was the attention of the jury particularly directed to the difference which the act expressly makes, both as to their duty in finding and the consequences which were to follow upon it?
The jury were never told that to constitute murder in the first degree, the killing should be willful, deliberate, malicious and premeditated, (there being no poison or lying in wait in the case,) and that all these must concur. Are we in so serious a case to overlook so great an omission? What is the office of the judge, if he be not required to aid the jury in applying the law to the facts proved? The case was new, for the act had but just been put into operation. The common law rules with which juries might be presumed to be familiar, had just then been done away, and the law substituted for it had never received construction.
Though there was but one bill of indictment, and but one count in that, yet it embraced three distinct crimes, either of which, under the indictment, it was in the power of the jury to find; but it was the business of the court to see, so far as the law was concerned, that the right crime was imputed to the prisoner.
Transpose the charge of the judge, and how will the case appear? The fact of killing being proved, the law presumes it was malicious, and imposes on the defendant the necessity of proving matter in alleviation, or that it was a less offence; should you find him guilty in the first degree, you will say so and no more; if in the second degree, you will fix the period of confinement. Here is no *354 attempt on the part of the court either to elucidate what would constitute the crime in the first degree, or direct the attention of the jury to its investigation. What malicious killing in the language of the charge is meant? Is express maliciousness meant, or is the term malicious intended to be applied as in cases of presumptive malice only? If we can draw any conclusion from the terms used, they must be referred to the latter; because he says the killing being proved, the law presumes the malice. If it was the intention of the judge to confine himself to the. cases of presumptive malice only, then the jury have not followed the charge; if the judge meant that either species of malice would be received alike in constituting the crime, then the jury were misled.
The line between murder in the first and murder in the second degree, is as well marked as the distinction between murder and manslaughter. In a case at Jackson, (the name not recollected — I drew the opinion,) one ground of reversal was, because the court did not in his charge, draw the legal distinction between the offences; and so it should be in all cases where, by the indictment, a defendant may be found guilty of a less offence. If this be not the law, then juries become judges, the whole belongs to them, and the county court may as well have the jurisdiction as the circuit court. Surely it requires no argument to show that in all cases men are entitled to have the law of the case administered to them.
I do not go into the facts in the record to see if they justify the finding; were I to do so, points would arise on the manner of conducting the admission of testimony, which would extend the opinion to needless length.
A question is raised upon the form of the indictment. It is said the crime should be charged £ito be murder in the first degree,Jt if it is intended the prisoner shall answer for that crime.
The rule of law is, that where an offence is statutoiy, the facts charged should be laid in the language of the *355 statute, to bring the offence within it. I cite from memory, Hale’s H. P. of Crown. Upon principle it would seem, that if a statute give to a common law offence a new character, circumscribing it by new marks and boundaries other than those used at common law, the same rule should prevail. True, the objection has been met with the answer that this was a common law offence, and the statute (72d section) provides, that where the offence was one at common law, the indictment shall be good if the offence be described or charged according to the common law, or according to the statute, and on conviction the party shall receive the punishment prescribed by the act. Is this applicable to the charge before us? What is the description of the offence in the bill of indictment we are considering? Did “feloniously, willfully, unlawfully and of his malice aforethought,” kill and murder. This is not the description of murder in the first degree, but it is of murder in the second degree according to the statute. Murder in the first degree, is when the slaying is willful, deliberate, malicious and premeditated killing, &c. All other kinds of murder shall be deemed murder in the second degree. Here the terms used in the indictment cannot reach an offence, the description of which is not reached by common law definition, unless indeed we intend after conviction, that the finding contrary to what the jury have expressed, shall reach another crime, neither in the bill of indictment nor verdict; for the finding is “guilty of murder in manner and form as charged in the bill of indictment.” If then the verdict refers us to the indictment for the facts found, it must be seen by reference to the indictment, that it can be but murder in the second degree; for it is no where supported by the terms used in the indictment, or in the finding of the jury, when compared with the description of murder in the first degree as given in the statute.
I will admit for the sake of argument, that the charge in the bill of indictment, aided, as some suppose it is, *356 by the 72d section, will be sufficient; still to justify a judgment for the most heinous of the two murders, the jury should find in their verdict the manner. If by poison, say so; if-willful, deliberate, malicious and premeditated, say so; and the like of any other one of the different species of murders in the first degree.
Surely the court will require certainty from some quarter, before they will give a judgment affecting life; and in any aspect in which this case can be viewed, upon the pleadings, the charge of the court or finding thereon, there is no such certainty, and not enough to justify the judgment rendered.
Where he pleads guilty the law had two objects in view: 1. In tenderness to the accused; and 2d. To prevent one getting off by pleading guilty of the lesser of-fence, when in fact he was guilty of the higher offence. I am for reversing the judgment.
Judgment reversed.